RCVD - USDC - CHAS SC
2026 OCT 1 AM 11:06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Antonio Gardenhire Pro Se

Plantiff,

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

Volvo Car USA LLC

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. ______________________

*(to be filed in by the Clerk's Office)*

Jury Trial: ☒ Yes ☐ No
*(check one)*

**I. The Parties to This Complaint**

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Antonio Gardenhire Pro Se |
| Street Address | 8505 Alex Harvin HWY |
| City and County | Summerton, Clarendon |
| State and Zip Code | SC 29148 |
| Telephone Number | 305-898-9021 |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name: See Attachment

Job or Title (if known):

Street Address:

City and County:

State and Zip Code:

Telephone Number: 800-458-1552

Defendant No. 2

Name:

Job or Title (if known):

Street Address:

City and County:

State and Zip Code:

Telephone Number:

Defendant No. 3

Name:

Job or Title (if known):

Street Address:

City and County:

State and Zip Code:

Telephone Number:

Defendant No. 4

Name:

Job or Title (if known):

## B. Defendant(s)

1. Defendant Volvo Car USA LLC is alleged to be a foreign limited liability company doing business in South Carolina and operating or participating in the operation of the facility where Plaintiff worked. Its registered agent and principal business address and corporate headquarters are located at 1800 Volvo Pl, Mahwah, NJ 07430. Volvo may be served with process by serving its registered agent, CT Corporation System, 2 Office Park Court Suite 103, Columbia, South Carolina 29223.

| | |
|---|---|
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

**C. Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | Volvo Car USA LLC |
| Street Address | 1801 Volvo Car Drive |
| City and County | Ridgeville, Berkeley |
| State and Zip Code | SC, 29472 |
| Telephone Number | 1-844-827-5268 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:

42 U.S. Code § 1981 , 29 U.S.C. § 201 et seq.

☒ Relevant state law *(specify, if known)*: Breach of Implied Contract via SC Code § 41-1-110

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☒ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Other acts *(specify)*: Age, Sex, Race and Constructive Discharge

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) 05/06/2024 - 09/05/2024

C. I believe that defendant(s) *(check one)*:

- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒ race African American
- ☒ color Black
- ☒ gender/sex Male
- ☐ religion ______
- ☒ national origin West/Coastal Central Africa
- ☒ age. My year of birth is 1980. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)* ______

E. The facts of my case are as follows. Attach additional pages if needed.

See Attachment

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

08/19/2024 (Closed as Duplicate) and 09/16/2024

B. The Equal Employment Opportunity Commission *(check one)*:

- ☐ has not issued a Notice of Right to Sue letter.
- ☒ issued a Notice of Right to Sue letter, which I received on *(date)* 07/23/2026.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attachment

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A. For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/1, 2026.

Signature of Plaintiff ____________________

Printed Name of Plaintiff Antonio D. Gardenhire Pro Se

**B. For Attorneys**

Date of signing: __________, 20__.

Signature of Attorney ____________________

Printed Name of Attorney ____________________

Bar Number ____________________

Name of Law Firm ____________________

Address ____________________

Telephone Number ____________________

E-mail Address ____________________

RCVD - USDC - CHAS, SC
2026 OCT 1 PM 3:35

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**CHARLESTON DIVISION**

ANTONIO GARDENHIRE,
Plaintiff, Pro Se,

v.

VOLVO CAR USA LLC,
Defendant.

CIVIL ACTION NO.: ________________

**COMPLAINT FOR DAMAGES AND JURY DEMAND**
(Filed Pro Se)

## I. NATURE OF THE ACTION

1. This action arises from Defendant's race discrimination, retaliation, hostile work environment, interference with training and advancement, unpaid wages, unauthorized final-paycheck deduction, breach of contract, and constructive discharge.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; 42 U.S.C. § 1981; and South Carolina statutory and common law.

3. Plaintiff alleges Defendant systematically altered corporate records, Employer Identification Numbers (EINs), and employee headcounts to deceptively claim a small-business statutory exemption and evade federal liability.

4. Plaintiff is an African American male of West African descent, dark-skinned, and over forty (40) years of age, placing him within the classes protected against discrimination based on

race, color, sex, and age. Defendant employed Plaintiff as an hourly Paint Shop Team Member at their manufacturing facility located at 1801 Volvo Car Drive, Ridgeville, South Carolina, inside Berkeley County, from February 19, 2024, until his retaliatory constructive discharge on September 9, 2024.

## II. PARTIES

5. Plaintiff Antonio D. Gardenhire is an African American man of West African descent, dark-skinned, over 40 and a resident of Clarendon County, South Carolina.

6. Defendant Volvo Car USA LLC is alleged to be a foreign limited liability company doing business in South Carolina and operating or participating in the operation of the facility where Plaintiff worked. Its registered agent and principal business address and corporate headquarters are located at 1800 Volvo Pl, Mahwah, NJ 07430. Volvo may be served with process by serving its registered agent, CT Corporation System, 2 Office Park Court Suite 103, Columbia, South Carolina 29223.

7. Defendant was an "employer" engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b) and **maintained a workforce of 501 or more employees** for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b).

9. The Court has supplemental jurisdiction over related South Carolina state-law claims under 28 U.S.C. § 1367.

10. Venue is proper in the Charleston Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this judicial district.

## IV. ADMINISTRATIVE EXHAUSTION

11. Plaintiff filed complaints and charges with the U.S. Equal Employment Opportunity Commission (EEOC) and cross-filed with the South Carolina Human Affairs Commission (SCHAC) under Charge Numbers 2-25-37A.R.RET and 1-26-111R, S and EEOC Charge Numbers 14C-2024-01158 and 415-2024-02305.

12. Plaintiff initiated an investigation with the South Carolina Labor Board on September 4, 2024, concerning his unpaid wages.

13. The EEOC issued a Notice of Determination and Right to Sue letter on July 23, 2026. The SCHAC issued a Notice of Determination and Right to Sue on June 8, 2026. This Complaint is filed within ninety (90) and (120) days of Plaintiff's receipt of said Notices.

## V. INTEGRATED ENTERPRISE & JOINT EMPLOYER STATUS

14. At all relevant times, Defendant operated as an integrated enterprise and joint employers regarding Plaintiff's day-to-day employment.

15. Defendant shares highly interrelated operational structures, centralized control of labor relations, common management, and shared financial control. When aggregated, Defendant employ thousands of individuals, satisfying the statutory employee thresholds under Title VII.

## VI. STATEMENT OF FACTS

### A. Employment Background and Timekeeping Practices

16. Plaintiff an African American with a darker skin tone accepted an offer of employment at Volvo Car USA LLC on or about February 19, 2024, and worked as an hourly Paint Shop Team Member at the Ridgeville facility. His work included finding and fixing defects and testing cars via water testing.

17. Defendant employed plaintiff as a Team Member assigned to Volvo Cars' paint shop as a team member at their Ridgeville, South Carolina facility from February 19, 2024, until his resignation on September 9, 2024.

18. On or about February 19 or 20, 2024, during orientation, Defendant presented Plaintiff with an employee handbook acknowledgment and an at-will disclaimer form. Defendant failed to provide a physical copy of the handbook, instead displaying transient slide sequences briefly during orientation.

19. Defendant's purported at-will disclaimer lacks the mandatory conspicuous formatting required by S.C. Code Ann. § 41-1-110, including prominent underlining and capital letters

bound inside an accessible text, thereby voiding their at-will shield and rendering the anti-harassment, training, and payment policies binding contractual covenants.

20. Defendant required hourly employees to use a two-punch timekeeping system but required employees to perform mandatory activities before and after their recorded shifts, including donning and doffing safety equipment and preparing stations.

21. Defendant automatically deducted a fixed 40-minute break period from employees' hours regardless of whether line transitions or operational requests required them to work through the break.

22. On March 11, 2024, Plaintiff sent Brandon Akers (Caucasian) supervisor a text message letting him know his paycheck hours were inaccurate.

**B. Removal from Training Duties and Advancement Barriers**

23. Plaintiff was selected as a Workplace Trainer and achieved a number-one ranking in plant-wide training metrics.

24. In April 2024, shortly after Plaintiff's wage complaint, Defendant removed Plaintiff from his Workplace Trainer duties without a performance-based disciplinary justification.

25. Plaintiff was scheduled to attend a "Shadow of a Leader" development training course on May 6, 2024. Plaintiff requested schedule coverage from his supervisor/Ambassador, Mikael Fernandez (African American). Mikael Fernandez failed to provide coverage or timely reply to Plaintiff's messages, causing Plaintiff to miss and be disqualified from the training cycle.

26. On August 13, 2024, a (Caucasian) Paint Shop Supervisor named Robert Tate was permitted to attend and complete the same training course despite having missed prior blocks.

**C. Hostile Work Environment and Internal Complaints**

27. Plaintiff alleges Defendant had constructive knowledge through its agents (specifically my Team Lead and Supervisor(s)).

28. On July 2, 2024, Plaintiff discovered an erroneous 7-point penalty on his active attendance tracking profile. Supervisor Torri Caldwell (African American) confirmed these points were inaccurate and requested their removal, but Human Resources left the erroneous points active.

29. On July 24, 2024, Plaintiff submitted a formal written anti-discrimination complaint via email to Employee Relations Manager Michael Pock (Caucasian), reporting workplace bullying, career advancement being stopped or blocked, and a racially degrading comment by a coworker who called him "little boy".

30. During a facility assembly on July 29, 2024, Plant Director David Stenstrom (Caucasian) and HR Director Elizabeth Richardson (Caucasian) acknowledged to the workforce that management was receiving an unmanageable volume of formal harassment complaints.

31. Plaintiff requested a permanent operational transfer to separate him from the reported supervisor and coworkers. Defendant denied the transfer, omitted key details from the internal file, and reloaded all seven attendance points back onto Plaintiff's profile on August 1, 2024.

32. On August 12, 2024, a (Caucasian) Team Lead named Seth Craven used racially offensive language, referred to Plaintiff as "old," and made the statement "you're a generational curse I wouldn't be surprised" on the active production floor. Plaintiff reported this conduct.

33. During the course of employment, Plaintiff was subjected to severe and pervasive sex discrimination, sexual harassment, and a hostile work environment perpetrated by a female coworker, Karen Gillens.

34. Specifically, Karen Gillens made highly inappropriate and derogatory statements about Plaintiff's wife, claiming that her anatomy was "worn out" from giving birth to their six children, and falsely alleging that Plaintiff's wife was sleeping with multiple men while Plaintiff was at work.

35. Karen Gillens further made sexually suggestive fabrications to an older coworker, claiming that Plaintiff wanted her to be his "sugar mama" and that Plaintiff sexually "wanted" her.

36. Karen Gillens also targeted Plaintiff's sexuality by claiming that his desire to transfer to the water testing department was motivated by a romantic or sexual interest in a male coworker.

37. On August 16, 2024, Plaintiff reported the ongoing hostile work environment directly to Plant Superintendent James (Jim) Walsh (Caucasian), identifying Gillens as one of the multiple coworkers and supervisor involved in the hostile behavior.

38. On August 21, 2024, Plaintiff observed Plant Superintendent Walsh interacting closely and smiling with the reported harasser, Seth Craven, which validated the hostile work environment.

39. Management failed to timely separate Plaintiff from the hostile network.

**D. Protected Activity, Retaliatory Assignments, and Involuntary Resignation**

40. On August 19, 2024, Plaintiff attended a scheduled harassment meeting where he gave a verbal warning to Marcial Cortez regarding external escalation. On the same day, Plaintiff initiated an active intake inquiry with the EEOC.

41. During the August 19 meeting, Defendant withheld Plaintiff's performance evaluation and associated pay increase.

42. On September 5, 2024, Defendant assigned one of the reported hostile coworkers to serve as a Backup Team Lead Karen Gillens in Plaintiff's immediate work area, while supervisor Torri Caldwell made the comment "this is about to be an episode".

43. Plaintiff alleges Defendant or its agents permitted and engineered workplace conditions that were so severe, pervasive, and retaliatory that a reasonable person in Plaintiff's position would feel compelled to separate from employment.

44. Unable to endure these hostile conditions, Plaintiff put in an Emergency Occurrence on September 5, 2026, to supervisor Torri Caldwell to be off September 6, 2026, and involuntarily resigned via email on September 9, 2024, constituting a constructive discharge.

45. Plaintiff's forced separation directly subverts to the clear public policy of the State of South Carolina, protecting workers who oppose racial hostility and reporting unlawful corporate wage extraction.

46. On September 11, 2024, following notification of the South Carolina Labor Board's wage investigation, Defendant deducted 32 hours of pay ($712) from Plaintiff's final paycheck. Employee Relations Manager Michael Pock defended the deduction in a subsequent email on September 12, 2024.

47. Defendant retaliated against Plaintiff for reporting the acts and failed to stop discrimination, detrimental treatment, and inappropriate behavior, thereby creating a hostile work environment.

48. It was the duty of Defendant, by and through its agents, servants and/or employees, to prevent such acts of race, color, sex, age and national origin discrimination, detrimental treatment, and inappropriate behavior from occurring and to stop it once the behavior has been reported by the plaintiff.

**E. Misrepresentation of Investigation and Pretext**

49. In its Position Statement, Defendant relies upon a misrepresentation and collapsed investigation timeline to justify its actions, falsely asserting that on **August 23, 2024**, investigator HR/PX Marcial Cortez (Hispanic) met with and/or obtained statements from three additional eyewitnesses.

50. April Dixon (Asian), Shirley Rivers (African American) and Tonya Williams (African American) who worked in the immediate area and witnessed the "generational curse" interaction.

51. Plaintiff alleges Defendant assertions are misleading; only **one** of the referenced witnesses Shirley Rivers was actually interviewed on August 23, 2024, while the remaining two individuals were interviewed on completely different days.

52. Plaintiff alleges Defendant misrepresented the workplace's proximity and relevance of these witnesses to simulate a thorough investigation. Two of the three individuals utilized by Defendant were not assigned to, nor were they part of w**ork deck 15** area where the protected interaction occurred.

53. Plaintiff alleges Defendant falsely claimed that all three witnesses confirmed the interaction; in truth, **only one** witness stated they heard the "generational curse" comment and noted it made Plaintiff angry, while the remaining individuals did not corroborate this account.

54. Defendant's false aggregation of these statements in its Position Statement constitutes a bad-faith distortion of material facts designed to conceal its breach of contract and statutory violations.

55. Plaintiff alleges Defendant subsequently altered corporate records, Employer Identification Numbers (EINs), and legal representation profiles across state and federal agency filings to falsely simulate a small-business exemption falling below the 15-employee Title VII threshold.

56. Plaintiff alleges Defendant's timeline is internally inconsistent. While the position statement asserts that the locker room mocking was not reported until August 21, 2024, **the Defendant's own contemporaneous HR notes from August 19, 2024, show explicit knowledge of this behavior.**

57. Plaintiff alleges contrary to Defendant's characterization, the Plaintiff's claims across both administrative filings arise from the same continuous course of discriminatory and retaliatory conduct by the Defendant.

58. Plaintiff alleges Defendant failed to meet the explicit formatting mandates of **S.C. Code Ann. § 41-1-110**, the non-discretionary reporting and investigation provisions within Defendant's policies which explicitly state that reported matters **"will promptly begin an investigation"** and **"will be reviewed until a resolution is reached"** created an enforceable implied contract of employment.

59. Plaintiff fully performed all obligations required under the employment contract by utilizing the open-door process and reporting the unlawful conduct to a Senior Human Resources representative.

60. Plaintiff alleges Defendant materially breached this implied contract when it accepted Plaintiff's constructive discharge resignation on **September 11, 2024**, and subsequently refused to conduct a fair and thorough review, omitted Plaintiff's critical evidentiary emails from the investigation record, and failed to properly process the formal grievance letter submitted by Plaintiff on that same day.

## VII. CLAIMS FOR RELIEF

### COUNT I: Title VII Race Discrimination

*(Against All Defendants as an Integrated Enterprise)*

61. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

62. Plaintiff is a member of a protected class (African American) and was fully qualified for his position, training tracks, and advancement milestones.

63. Defendant subjected Plaintiff to adverse employment actions based on his race, including removing his training title, denying leadership course access, freezing his scheduled compensation increases, and applying fraudulent disciplinary points.

64. Similarly situated white employees were treated more favorably under identical training and database metrics, in violation of Title VII of the Civil Rights Act of 1964.

**COUNT II: Title VII Retaliation**

65. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

66. Plaintiff engaged in protected activity under Title VII by opposing workplace race discrimination, submitting detailed internal open-door notices, and initiating an EEOC intake inquiry.

67. In direct retaliation for his complaints, Defendant subjected Plaintiff to adverse employment and economic actions, including withholding his six-month review, reloading erroneous database points, and assigning a reported harasser to supervise his workstation.

**COUNT III: Title VII Hostile Work Environment**

68. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

69. Plaintiff was subjected to unwelcome, race-based harassment on Defendant's production floor, including degrading language, the paternalistic "little boy" comment, the "generational curse" comment, continuous floor-level mocking and insults about his wife.

70. This conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment, and Defendant failed to take reasonable, prompt corrective action despite receiving multiple actual notices.

**COUNT IV: Race Discrimination and Retaliation Under 42 U.S.C. § 1981**
*(Making and Enforcing Contracts)*

71. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

72. Plaintiff possessed a clear statutory right to make, perform, and enforce employment contracts free from racial discrimination and retaliation under 42 U.S.C. § 1981.

73. Defendant intentionally interfered with Plaintiff's employment relationship, compensation milestones, and advancement opportunities because of his race, which served as a concurrent but-for cause of his structural injuries.

74. Defendant further violated Section 1981 by targeting Plaintiff's professional tracks, withholding contractual advancement, and manipulating post-employment wages because Plaintiff opposed racial harassment on the production floor.

**COUNT V: FLSA Unpaid Wages**

75. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

76. Plaintiff performed compensable work before, during, and after his scheduled shifts, including required donning and doffing of safety equipment, which went unrecorded and unpaid due to Defendant's automatic break deductions and tracking configurations.

77. Defendant's failure to compensate Plaintiff for all hours worked violates the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207.

**COUNT VI: FLSA Retaliation**

78. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

79. On March 11, 2024, Plaintiff engaged in a legally protected activity under 29 U.S.C. § 215(a)(3) by reporting that Defendants failed to pay for all time worked.

80. Defendant took materially adverse actions against Plaintiff because of his protected wage complaints, including removing him from trainer duties and executing a final paycheck extraction.

**COUNT VII: South Carolina Payment of Wages Act**

81. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

82. Defendant failed to pay Plaintiff all wages due by executing an unauthorized 32-hour claw back ($712) from his final paycheck within 24 hours of a state regulatory notice.

83. Defendant failed to provide written notice at least seven (7) calendar days before changing or newly applying the deduction term used to calculate his final pay, violating S.C. Code Ann. §§ 41-10-30(A) and 41-10-40.

**COUNT VIII: Breach of Implied Contract (Corporate Policy Matrix)**

84. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

85. Pursuant to S.C. Code Ann. § 41-1-110, Defendant's at-will disclaimers are void as a matter of law because they lacked mandatory conspicuous formatting and were completely unattached to any physical, bilateral corporate document prominently presented to the employee.

86. By failing the strict statutory requirements of Section 41-1-110, Defendant's non-discretionary written corporate policies (including Policies 3.0, 8.0, 10.0, 18.0, 23.0, 27.0 and 36.0) formed a binding implied-in-fact contract governing the terms and conditions of employment.

87. Defendant breached this implied contract by failing to execute objective investigations, improperly maintaining attendance penalties to stunt advancement, and systematically shaving compensable time.

**COUNT IX: Breach of Contract (Offer Letter & Final Wages)**

88. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

89. Plaintiff's written, signed offer letter formed a binding contract regarding compensation, hire-date paid time off (PTO) allocation, and employment terms.

90. Defendant breached this contract by executing an unauthorized 32-hour cash claw back ($712) from Plaintiff's final paycheck without contractual authorization, prior notification, or written agreement.

**COUNT X: Constructive Discharge / Wrongful Termination in Violation of Public Policy**

*(Plead in the Alternative Under South Carolina Common Law)*

91. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

92. At all relevant times, there existed a clear and well-defined public policy of the State of South Carolina protecting workers who exercise their rights under state labor standards and those who oppose unlawful racial hostility in the workplace.

93. Defendant intentionally and continuously tolerated, condoned, and engineered an intolerable work environment characterized by severe racial harassment, discriminatory stunting, and retaliatory assignments.

94. Defendant further retaliated against Plaintiff by executing a non-notified, retaliatory wage claw back from his final paycheck immediately following service of an active state labor board probe.

95. A reasonable person in Plaintiff's position would find these cumulative, malicious working conditions completely un-remedied and entirely intolerable, thereby compelling his resignation on September 9, 2024.

96. Defendant's actions in forcing Plaintiff's separation constitute an actionable constructive discharge and a wrongful termination that directly subverts to the public policy of South Carolina.

**COUNT XI: Sex Discrimination**

97. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

98. The conduct of Defendant's employee, Karen Gillens, was based entirely on sex and gender norms, targeting Plaintiff with unwelcome sexual comments, anatomy-based insults, and derogatory remarks regarding his sexuality.

99. This conduct was unwelcome, severe, and pervasive enough to alter the conditions of Plaintiff's employment and create an abusive, hostile working environment.

100. Defendant knew or should have known of the harassment following Plaintiff's formal report to the Superintendent on September 16, 2024, but failed to take prompt and effective remedial action.

101. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered emotional distress, loss of peace of mind, and damages to the terms and conditions of his employment.

**VIII. DAMAGES**

102. Plaintiff seeks unpaid wages, lost benefits, and uncompensated work time established through discovery.

103. Because Plaintiff was constructively discharged due to Defendant's unlawful conduct, Plaintiff seeks full back pay, front pay, and lost advancement values calculated from the date of his forced resignation.

104. Plaintiff seeks compensatory damages for humiliation, emotional distress, and mental anguish caused by the hostile work environment.

105. Plaintiff seeks liquidated damages under the FLSA and ADEA, and statutory treble damages under South Carolina law for the willful final paycheck extraction.

106. Plaintiff seeks punitive damages for Defendant's intentional, bad-faith manipulation of administrative filings, along with pre- and post-judgment interest.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant, jointly and severally, for the following relief:

1. An order declaring that Defendant operates as a single, integrated enterprise and joint employer under Title VII;

2. An award of unpaid wages, back pay, front pay, and lost benefits resulting from his constructive discharge;

3. An award of compensatory, statutory, liquidated, and punitive damages for emotional distress and willful violation of civil rights;

4. An award of statutory treble damages for the unauthorized final-paycheck deduction under South Carolina law;

5. An order directing the correction of inaccurate database and employment records; and

6. An award of reasonable court costs and such other and further relief as this Court deems just and proper.

## X. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Dated: 10/01/2026
Charleston, South Carolina

Respectfully submitted,

ANTONIO D. GARDENHIRE Pro Se
Plaintiff
8505 Alex Harvin Hwy
Summerton, SC 29148
305-898-9021